Case No. 15-16142

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PUBLIC INTEGRITY ALLIANCE, INC.,
an Arizona nonprofit membership corporation, *et al.*,

*Plaintiffs/Appellants*,

vs.

CITY OF TUCSON,
a chartered city of the State of Arizona, *et al.*,

*Defendants/Appellees*.

APPEAL FROM UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
D.C. No. 4:15-cv-00138-CKJ

# APPELLEES' PETITION FOR PANEL REHEARING AND FOR REHEARING EN BANC

MICHAEL G. RANKIN
City Attorney
DENNIS P. McLAUGHLIN,
Arizona State Bar No. 00197
Principal Assistant City Attorney
P.O. Box 27210
Tucson, Arizona 85726-7210
Telephone: (520) 791-4221
Fax: (520) 623-9803
*Attorneys for Defendants/Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

INITIAL STATEMENT ............................................................................... 1

ARGUMENT .............................................................................................. 5

I.     THE MAJORITY FAILED TO APPLY THE APPROPRIATE STANDARD ............................................................................... 5

II.    FOR PURPOSES OF EQUAL PROTECTION, THE CITY'S PRIMARY AND GENERAL ELECTIONS ARE TWO SEPARATE ELECTIONS, NOT A "SINGLE" ELECTION .................................................... 6

III.   *GRAY V. SANDERS* HAS NO APPLICATION HERE ................................. 12

IV.   THE CITY HAS BROAD AUTHORITY TO ESTABLISH THE RELEVANT GEOGRAPHICAL UNITS FOR ITS ELECTIONS .................. 14

V.    THE MAJORITY DID NOT CONSIDER *HOLSHOUSER* AND *STOKES V. FORTSON* ............................................................... 15

CONCLUSION .......................................................................................... 16

STATEMENT OF RELATED CASES ....................................................... 17

CERTIFICATE OF COMPLIANCE ........................................................... 18

CERTIFICATE OF MAILING ................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Alaskan Independence Party v. Alaska*,
    545 F.3d 1173 (9th Cir. 2008)...................................................................... 1-2, 8

*American Party of Texas v. White*, 415 U.S. 767 (1974) ..........................................1, 7

*Bates v. Jones*, 131 F.3d 843 (9th Cir. 1997) ...................................................................3

*Burdick v. Takushi*, 504 U.S. 428 (1992) .........................................................................1

*California Democratic Party v. Jones,* 530 U.S. 567 (2000) ........................................7

*Carrington v. Rash*, 380 U.S. 89 (1965).................................................................. 10, 15

*Chisom v. Roemer,* 501 U.S. 380 (1991)........................................................................16

*Clingman v Beaver*, 544 U.S. 581 (2005) .......................................................................8

*Dillenburg v. Kramer*, 469 F.2d 1222 (9th Cir. 1972)....................................................15

*Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) ...............................................................10

*Farrakhan v. Gregoire*, 623 F.3d 990 (9th Cir. 2010)......................................................3

*Fortson v. Morris,* 385 U.S. 231, 235 (1966)..................................................................13

*Geary v. Renne*, 2 F.3d 989 (9th Cir. 1993) .....................................................................3

*Gray v. Sanders*, 372 U.S. 368 (1963)...........................................................2, 5, 12-14

*Hall v. Louisiana*, 12 F.Supp. 3d 878 (M.D. La. 2014).................................................16

*Harris v. McRae*, 448 U.S. 297 (1980)...........................................................................10

*Hill v. Stone*, 421 U.S. 289, 297 (1975)..........................................................................15

*Holshouser v. Scott*, 335 F.Supp. 928 (M.D.N.C. 1971),
    *aff'd* 409 U.S. 807 (1972) ........................................................................2, 15-16

*Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60 (1978) .......................... 1, 2, 13, 15

*Lassiter v. Northampton County. Bd. of Elections*,
    360 U.S. 45 (1959) ..................................................................................................10

*Lightfoot v. Eu,* 964 F.2d 865 (9th Cir. 1992) .............................................................2, 8

*Lipscomb ex rel. DeFehr v. Simmons*,
    962 F.2d 1374 (9th Cir. 1992).................................................................................3

*Little Thunder v. South Dakota*, 518 F.2d 1253 (8th Cir. 1975) ...................................15

*Mandel v. Bradley*, 432 U.S. 173 (1977)................................................................. 15-16

*McPherson v. Blacker*, 146 U.S. 1 (1892).......................................................................10

*Newberry v. United States*, 256 U.S. 232 (1921) ........................................................1, 7

*New York State Bd. of Elections v. Lopez Torres,*
    552 U.S. 196 (2008) ................................................................ 1, 7-8

*Padilla v. Lever*, 463 F.3d 1046 (9th Cir. 2006) ............................................3

*Public Integrity Alliance v. City of Tucson,*
    805 F.3d 876 (9th Cir. 2015).......................................................... passim

*Smith v. Allwright*, 321 U.S. 649 (1944) .................................................. 9-11

*Southwest Voter Registration Educ. Project v. Shelley,*
    344 F.3d 914 (9th Cir. 2003)..........................................................3

*Stokes v. Fortson*, 234 F.Supp. 575 (N.D. Ga. 1964) ..................................15

*Storer v Brown*, 415 U.S. 724, 735 (1974)...............................................11

*Town of Lockport v. Citizens for Community Action at the Local Level,*
    430 U.S. 259 (1977) .................................................................2, 14-15

*United States v. Classic*, 313 U.S. 299 (1941) ........................................ 9-11

*Wells v. Edwards,* 347 F.Supp. 453 (M.D. La. 1972),
    *aff'd,* 409 U.S. 1095 (1973)........................................................16

*Ziskis v. Symington*, 47 F.3d 1004 (9th Cir. 1995)......................................8

## Rules

FED. R. APP. P. 35 ................................................................................1
FED. R. APP. P. 40 ................................................................................1
NINTH CIR. R. 35-1 ...............................................................................1

## Statutes

A.R.S. § 16-341 ..................................................................................
Reno City Charter, Art. V, §§ 5.010, 5.020 ..................................4
Revised Code of Washington (RCW) 28A.343.660 ........................4
RCW 29A.52.231 ................................................................................4
RCW 35.18.020 ................................................................................4
RCW 35A.12.180 ................................................................................4
RCW 35.23.080 ................................................................................4
RCW 35.23.051 ................................................................................4
RCW 36.32.404 ................................................................................4
RCW 36.32.050 ................................................................................4
RCW 36.32.0556 ................................................................................4
RCW 53.12.010 ................................................................................4

RCW 54.12.010 ....................................................................................................4

RCW 52.14.013 ....................................................................................................4

RCW 57.12.039 ....................................................................................................4

Sparks City Charter, Art. V, §§ 5.010, 5.020 ....................................................4

Defendants/Appellees (collectively, "the City") petition for panel and en banc rehearing of this matter under FED. R. APP. P. 35 and 40 and NINTH CIR. R. 35-1.

## INITIAL STATEMENT

On November 10, 2015, a three-judge panel of this Court ruled 2-1 that the City violates the Equal Protection Clause of the Fourteenth Amendment by having its Council Members nominated by the voters of the ward in which the Council Member resides but elected by the voters of the City at large. *Public Integrity Alliance v. City of Tucson*, 805 F.3d 876 (9th Cir. 2015) ("*PIA*") (Attachment 1).

The two circuit judges on the panel (Judges Kozinski and Tallman) came to opposite conclusions on the issue, with Senior District Judge Piersol[1] joining Judge Kozinski in the majority and Judge Tallman strongly dissenting.

The Court should grant panel or en banc rehearing for the following reasons:

1.      The panel's Opinion conflicts with the following decisions of the Supreme Court and this Court, and consideration by the full Court is therefore necessary:

- *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60 (1978) and *Burdick v. Takushi*, 504 U.S. 428 (1992) (standards for evaluating laws respecting geographical limits on the right to vote).

- *American Party of Texas v. White*, 415 U.S. 767 (1974); *New York State Bd. of Elections v. Lopez Torres,* 552 U.S. 196 (2008); *Newberry v. United States*, 256 U.S. 232 (1921); *Alaskan Independence Party v. Alaska*, 545

_____

[1]      For the U.S. District Court for the District of South Dakota, sitting by designation.

1

F.3d 1173 (9th Cir. 2008); *Lightfoot v. Eu*, 964 F.2d 865 (9th Cir. 1992) (nature of primaries; separateness of primaries and general elections; state control over nomination process).

- *Gray v. Sanders*, 372 U.S. 368 (1963) (majority's misapplication of its one person, one vote holding).

- *Holt* and *Town of Lockport v. Citizens for Community Action at the Local Level*, 430 U.S. 259 (1977) (state's power to draw electoral boundaries and recognize differing voter interests).

- *Holshouser v. Scott*, 335 F.Supp. 928 (M.D.N.C. 1971), *aff'd* 409 U.S. 807 (1972) (rejecting same challenge to judicial election).

2. The proceeding involves a question of exceptional importance to both equal protection doctrine and state and local control of elections: Does the Equal Protection Clause permit the City to nominate its Council Members by ward and elect them at large?[2] Put another way, may the City use different electoral boundaries for its primary and general elections, or must the boundaries be the same in both elections?

The question raised in this case is particularly appropriate for en banc reconsideration under this Court's precedent. This Court has historically granted en banc rehearings and utilized them to overrule incorrect panel rulings in three categories of cases specifically relevant here:

---

[2] The process makes Council Members answer to both voters Citywide who elect them and voters in their ward who nominate them; guarantees that nominees have ward support; and assures each ward representation on a unitary governing body aware of each ward's issues, problems, and views.

1. **Equal protection challenges to state action:** *Lipscomb ex rel. DeFehr v. Simmons*, 962 F.2d 1374 (9th Cir. 1992) (reversing panel, finding no equal protection violation in Oregon statutes regulating foster care benefits);

2. **Challenges to state and local election procedures:** *Padilla v. Lever*, 463 F.3d 1046 (9th Cir. 2006) (reversing panel, holding school district recall petitions were not subject to Voting Rights Act provision regarding translation of election materials); *Farrakhan v. Gregoire*, 623 F.3d 990 (9th Cir. 2010) (reversing panel, holding Washington's felon disenfranchisement law did not violate Voting Rights Act); *see also Geary v. Renne*, 2 F.3d 989 (9th Cir. 1993) (in challenge to facial constitutionality of California Elections Code, ordering panel opinion withdrawn and superseded by en banc opinion); and

3. **Equal protection challenges to state election procedures:** *Bates v. Jones*, 131 F.3d 843 (9th Cir. 1997) (reversing panel, rejecting equal protection challenge to California's term limits for state officeholders); *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914 (9th Cir. 2003) (reversing panel in equal protection challenge to use of "punch-card" balloting machines in California initiative and gubernatorial recall elections).

This Court should act likewise here. The question raised here is an important one; the panel majority opinion is wrong; and Judge Tallman's dissent is right. By incorrectly holding that the City's primary and general elections must be treated as a "single" election for purposes of drawing electoral boundaries, the *PIA* Opinion contradicts a long line of Supreme Court decisions upholding state and local control

over elections,[3] and stretches the one person, one vote principle beyond its traditional application. The panel's Opinion creates a brand new equal protection right not previously recognized by the Supreme Court or this Court, and unsupported by the decisions of either. If upheld, it will spur other challenges, directed not only at other state and local election systems, including nonpartisan ones, but also at distinctions routinely made by election officials between primary and general elections and the voters who vote in them.

It is already clear that the panel's Opinion will not only affect the City's partisan election system, but could also affect similar partisan and nonpartisan state or local election systems in at least two other states within the Ninth Circuit. Two Nevada cities, Reno and Sparks, both conduct *nonpartisan* primary and general elections in the same manner as the City under their charters.[4] Nonpartisan[5] and partisan ward primaries and at-large general elections are conducted by various cities[6] and general law counties[7] in the State of Washington, as well as by certain of its school districts,[8] port commissions,[9] and special districts.[10]

---

[3]     For a fuller discussion of the holdings confirming state and local control over their elections, and the limited nature of the one person, one vote doctrine, *see* Appellee's Answering Br. §§ I(A)-(H).
[4]     *See* Reno City Charter, Art. V, §§ 5.010, 5.020 (Attachment 2); Sparks City Charter, Art. V, §§ 5.010, 5.020 (Attachment 3).
[5]     Revised Code of Washington (RCW) 29A.52.231 (nonpartisan offices specified).
[6]     RCW 35.18.020, 35A.12.180, 35.23.080, 35.23.051.
[7]     RCW 36.32.404, 36.32.050, 36.32.0556.
[8]     RCW 28A.343.660.
[9]     RCW 53.12.010.
[10]    RCW 54.12.010, 52.14.013, and 57.12.039.

The question raised in this case is too important, and the panel majority's Opinion too poorly reasoned and inconsistent with current Supreme Court and Ninth Circuit precedent, to have that Opinion stand as the law on this issue.

Finally, if the panel majority's creation of a brand new equal protection right is to be Ninth Circuit law, then it should be declared by this Court after full and careful en banc consideration and decision, not through a 2-1 panel opinion where the two circuit judges involved in the decision strongly disagreed.

**ARGUMENT**

The majority's Opinion failed to apply the appropriate standard for evaluating laws respecting the right to vote. It also rests on three flawed and incorrect conclusions, each of which Judge Tallman effectively and correctly contradicts in his dissent, and all of which should be revisited and rejected by this Court:

1. Primary and general elections "are complementary components of a *single* election." *PIA*, 805 F.3d at 879 (emphasis supplied).

2. *Gray v. Sanders* requires the City to use the same election districts for its primary and general elections. *Id.* at 880.

3. The City cannot constitutionally impose a ward residency requirement to exclude voters in its primary elections. *Id.* at 882.

**I.    THE MAJORITY FAILED TO APPLY THE APPROPRIATE STANDARD**.

As Judge Tallman noted, "[c]onspicuously absent from the majority's opinion is any mention of the appropriate standard of review" for "evaluating laws respecting the right to vote." *Id.* at 883. This case could and should be decided on the basis of the

rational basis standard specifically applicable to residency qualifications under *Holt.*
Even Judge Tallman's "lesser burden" analysis under *Burdick* leads to the same correct
result. In any event, it was error for the majority to fail to apply, or to misapply, either
of these standards to this case.

## II.  FOR PURPOSES OF EQUAL PROTECTION, THE CITY'S PRIMARY AND GENERAL ELECTIONS ARE TWO SEPARATE ELECTIONS, NOT A "SINGLE" ELECTION.

According to the majority, the City's primary and general elections are "two
parts of a single election cycle, which must be considered in tandem when determining
their constitutionality." *Id.* at 879. Elsewhere, the majority states even more
categorically that the two elections "are complementary components of a single
election," and "entirely co-dependent." *Id.* The majority itself considers the concept of
a single election to be its key conclusion, stating "[i]f the two elections [are] separate,
PIA's constitutional objections would largely evaporate and this would become a
simple case." *Id.* Because the two elections actually *are* separate, PIA's constitutional
objections *do* evaporate, and this *is* a simple case, with a panel Opinion that must be
reversed.

For purposes of equal protection, the majority's attempted merging of the City's
two elections into one "single" election is simply untenable. They are two separate
elections, for which the City may set two different electoral boundaries. Here are the
reasons why:

1.      The City's partisan primary election is offset in time from its general
election by two months.

2.      The two elections perform different functions.  As Judge Tallman notes, "[p]rimary elections in Tucson are … nothing more than the means political groups use to choose the standard bearers who will face off in the general election."  *Id.* at 885.  The Supreme Court long ago came to the same conclusion.  "[Primaries] are in no sense elections for an office but merely methods by which party adherents agree upon candidates whom they intend to offer and support for ultimate choice by all qualified electors."  *Newberry*, 256 U.S. at 250.

3.      The electorates at the two elections, by federal constitutional mandate, can never be the same.  The City could never replicate its general election electorate at its partisan primary elections, because it cannot force a party qualified for the ballot to include voters from another qualified party as eligible voters in its primary.  *California Democratic Party v. Jones,* 530 U.S. 567 (2000).

4.      Finally, it is settled federal constitutional law that the City is free to choose whether primaries occur at all.  It can mandate them.  *Jones*, 530 U.S. at 572.  It can also choose not to have them, or to allow primaries for some parties and not for others.  *American Party of Texas*, 415 U.S. at 781-82 (state may require larger parties to use primaries and smaller parties to use conventions to select nominees to appear on the general-election ballot).  Or it could have the primary merely be a preliminary to a convention.  *Lopez Torres,* 552 U.S. at 206 (primary selected delegates to convention, which then selected nominee).  When the state gives a party the right to have its candidates appear with party endorsement on the general-election ballot, "the State acquires a legitimate governmental interest in ensuring the fairness of the party's

nominating process, enabling it to prescribe what that process must be." *Lopez Torres*, 552 U.S. at 203.

In deciding freedom of association challenges to primaries required by the state, this Court too has decided that "a state categorically has the power to determine the method by which a party nominates a candidate." *Lightfoot,* 964 F.2d at 872; *accord Alaskan Independence Party*, 545 F.3d at 1177-78.

The wholly optional nature of primaries as potential preliminaries to general elections, and the various ways they may permissibly be structured and used in the nomination process, emphasize their separateness from general elections and contradict the majority's position.

Because of these obvious differences, Judge Tallman correctly stated that "primary and general elections are not on the same constitutional footing" and therefore "individuals do not have an absolute right to vote in a primary election. States may, for example, host a "closed" or "semiclosed" primary, in which only people who are registered members of a major political party may vote." *PIA*, 805 F.3d at 885 (citing *Clingman v. Beaver*, 544 U.S. 581, 584 (2005)). Thus, "the Constitution permits states to prohibit qualified individuals who are registered Independents (or who chose not to register as a party member) from voting in a primary election." *Id.* Consistent with this principle, this Court upheld Arizona's then-operative "closed primary" system in the face of a Fourteenth Amendment challenge in *Ziskis v. Symington*, 47 F.3d 1004 (9th Cir. 1995).

The majority ignores this precedent, and instead relies on cases that, as Judge Tallman notes, "do not establish that primary and general elections must always be considered together." *PIA*, 805 F.3d at 886.

For example, the majority cites *United States v. Classic*, 313 U.S. 299 (1941), an election fraud case where the government prosecuted certain state election commissioners for allegedly falsifying ballots in a Democratic primary. The majority quotes *Classic* out of context as purported authority for a generalized assertion that "[b]ecause a candidate must win a primary in order to compete in the general election, the 'right to choose a representative is in fact controlled by the primary.'"[11] *PIA*, 805 F.3d at 879 (quoting *Classic*, 313 U.S. at 319). In fact, read in context, the quoted language was based on the allegations of the indictment in *Classic*, and thus specific to *Classic*'s facts. Control of the general election through the primary ("whites only" Democratic primaries) was certainly true for Louisiana in 1941. But the Supreme Court's statement was never intended as a universally applicable statement of equal protection law in all cases at all times. Yet the majority makes exactly that error.

The Supreme Court itself, just three years later, stated that the only real holding in *Classic* was as follows:

> We there held that Section 4 of Article I of the Constitution authorized Congress to regulate primary as well as general elections, *'where the primary is by law made an integral part of the election machinery.'*

---

[11]     The majority's first quoted clause is incorrect. City candidates can also get on the general election ballot through a process of nomination. *See* A.R.S. § 16-341.

*Smith v. Allwright*, 321 U.S. 649, 659-60 (1944) (emphasis supplied) (internal citations omitted). That description of *Classic*'s holding emphasizes the distinctness of the two elections and contradicts the idea that they can be considered a "single" election.

Moreover, as Judge Tallman stated, *Classic* itself states that it only protects "qualified" primary voters, leaving to the City to decide who is "qualified":

> *Classic* teaches us that Tucson cannot deprive a "qualified" voter from voting in a ward primary. However, Tucson retains broad discretion to decide who is "qualified" to vote in its primaries. Thus, *Classic* does not preclude Tucson from setting up ward-based primaries whose "qualified" voters are limited to the residents of that particular ward.

*PIA*, 805 F.3d at 886.

Unlike the majority's reading of *Classic*, Judge Tallman's is fully consistent with the Supreme Court's other precedent emphasizing state and local control over their elections. "[T]he Constitution of the United States does not confer the right to vote in state elections." *Harris v. McRae*, 448 U.S. 297, 322 n. 25 (1980). "The right to vote intended to be protected [by the 14th Amendment] refers to the right to vote as established by the laws and constitution of the state." *Lassiter v. Northampton County. Bd. of Elections*, 360 U.S. 45, 51, (1959); *McPherson v. Blacker*, 146 U.S. 1, 39 (1892). "The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised," *Carrington v. Rash*, 380 U.S. 89, 91 (1965), and may "impose voter qualifications and regulate access to the franchise in other ways." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972).

The majority similarly misapplies *Smith v. Allwright*, which, as Judge Tallman points out, actually held only "that a political party may not create a 'whites only' primary." *PIA*, 805 F.3d at 886. As with *Classic*, the majority quotes *Smith* in

asserting that the primary and general elections are a "single instrumentality for choice of officers." *Id.* at 879 (citing *Smith*, 321 U.S. at 660). Likewise, the majority quotes *Smith*'s use of the word "unitary" in claiming that "[b]ecause the primary and general elections are two parts of a 'unitary' process, … a citizen's right to vote in the general election may be meaningless unless he is also permitted to vote in the primary." *Id.*

The majority is simply incorrect. Nowhere does either *Classic* or *Smith* say any such thing. Indeed, in the quote above, the majority itself refers to the primary and general elections as "two parts" of a "unitary process." This reference is consistent with the Supreme Court's own statements that the primary is simply the first of two "steps," *Classic*, 313 U.S. at 316-17, or the "initial stage in a two-stage process." *Storer v. Brown*, 415 U.S. 724, 735 (1974). There are two separate elections here, not one.

Though cited by the majority, both *Classic* and *Smith* contradict the majority's position and support the City's. Both cases protected qualified voter rights in primary elections that were understood to be, *and created difficulties precisely because they had to be analyzed as*, elections separate and distinct from their general elections. Neither case ever treated the two types of elections as one. Neither contradicts the City's position throughout this litigation—that primary and general elections are both made part of the overall election "machinery," "process," or "instrumentality," either by state statute or, as here by the City's Charter, does not make them a "single" election for equal protection purposes.

The majority compounds its errors by trying to use the City's current political demographics as a basis to justify its incorrect view of the City's primary and general

elections as one election. *PIA*, 805 F.3d at 880 ("Tucson generally votes Democratic,"
and "the City's current mayor and all six councilmembers are Democrats … in most
cases … the Democratic ward primary is the only election that matters; the general
election is a mere formality"). That one party currently has a registration advantage,
and which political party is being elected at a particular point in time, have nothing to
do with the constitutional question before this Court, and cannot justify the majority's
incorrect decision.[12]

## III.  *GRAY V. SANDERS* **HAS NO APPLICATION HERE.**

The majority concludes that Tucson's election system for electing its city
council violates the "one person, one vote" principle announced in *Gray v. Sanders,*
372 U.S. at 380. According to the majority, Tucson's system violates equal protection
principles by designating different geographical units for its primary and general
elections. *PIA*, 805 F.3d at 880.

Judge Tallman rightly disputed this, stating that "the Supreme Court has never
before held that the same geographical unit must apply to both the primary and general
elections." *Id.* at 886. In the 52 years since *Gray*, no federal court has used *Gray* as a
purported basis to say that geographical eligibility to vote in one election creates a
constitutional right to be geographically eligible to vote in another election.

Until now.

The majority makes three egregious mistakes here. First, it misinterprets the
wording and context of *Gray* itself. *Gray* involved a statewide primary election for

---

[12]     The majority also posits two hypotheticals, dissimilar to our facts, which are
addressed in Judge Tallman's dissent and need no further discussion.

offices that would eventually also be elected statewide. The "geographical unit" for both the primary and general election happened to be the same in *Gray*, but the only "representative … to be chosen" in that primary election was the party nominee for the general election. For City voters, meanwhile, both the "geographical unit for which a representative is to be chosen" and the "representative … to be chosen" are different in the City's primary and general elections, by Charter definition. At the City's primary, no one is elected to office. The "geographical unit" is the ward, and the only representative to be chosen is the party nominee for that ward. At the general election, the "geographical unit" is the City as a whole, and the representatives to be chosen are the council members. This is constitutionally permissible. As Judge Tallman correctly stated, "*Gray* does not deprive states of their broad authority to set the geographical unit from which a representative is to be elected." *PIA*, 805 F.3d at 887 (citing *Holt*, 439 U.S. at 68-69, holding that city need not extend the franchise to the citizens living in unincorporated area outside city limits, even though those citizens are subject to city's police powers).

Second, the majority ignores the Supreme Court's own subsequent statements about *Gray*, which show that it created no such requirement or new constitutional right as the majority claims. "The *Gray* case … did no more than to require the State to eliminate the county-unit machinery from its election system." *Fortson v. Morris,* 385 U.S. 231, 235 (1966).

Third, the majority's judicial invention of a "static" electoral constituency, projected backwards from the general election, that then forces a "static" electoral unit in both the primary and general elections is wholly inconsistent with the Supreme

Court's decisions granting states and localities broad powers over elections, electoral districts, and primaries, as well as with the correspondingly narrow focus of the "one person, one vote" cases.[13]  Specifically, it improperly reads "one person, one vote" doctrine to extend to more than one election, and to grant a right to vote where none has been authorized by the state.  Neither of these things are supportable under the "one person, one vote" doctrine, as the Supreme Court has made clear in multiple cases after *Gray*.  Creating such a requirement makes little sense in the case of partisan primary and general elections.  A partisan primary by its nature has a different time frame, function, electorate, and candidates than a general election; stands on a lesser constitutional footing than the latter; and occurs at the sole discretion of the state.

## IV.  THE CITY HAS BROAD AUTHORITY TO ESTABLISH THE RELEVANT GEOGRAPHICAL UNITS FOR ITS ELECTIONS.

The majority rejected the City's right to have different residency qualifications for its primary and general elections based on its erroneous conclusion that "the out-of-ward Tucsonans who are excluded from the ward primaries have precisely the same interests in those primaries as do the ward residents who are permitted to participate." *PIA*, 805 F.3d at 882.  But as made clear by Judge Tallman, and contrary to the majority's assertion, the City has demonstrated that, as to its primary, there is a "genuine difference in the relevant interests of the groups that the state electoral classification has created," as required by the case cited by the majority, *Town of Lockport*, 430 U.S. at 268.  The City's in-ward and out-of-ward voters do not in fact have "identical" interests in the ward primaries.  Given that, the City's system is

---

[13]     *See* Appellees Answering Br. §§ I(A)-(H).

constitutional if "the [City] might legitimately view their interests as sufficiently different to justify a distinction between [the two groups of] voters." *Id.* at 270 n. 17; in other words, if there is a rational basis for the City's classification.

As to the residency requirement itself, in drawing electoral boundaries, the City has "*unquestioned* power to impose reasonable residence restrictions of the availability of the ballot." *Carrington*, 380 U.S. at 91 (emphasis supplied). Residency qualifications are not subject to strict scrutiny. *Hill v. Stone*, 421 U.S. 289, 297 (1975). Rather, they are again analyzed under a rational basis standard. *Holt,* 439 U.S. at 70-71.[14]

## V. THE MAJORITY DID NOT CONSIDER *HOLSHOUSER* AND *STOKES V. FORTSON*.

In a footnote, the majority rejected the City's reliance on *Holshouser*, summarily affirmed by the Supreme Court, and *Stokes v. Fortson*, 234 F.Supp. 575 (N.D. Ga. 1964). *PIA*, 805 F.3d at 880, n. 2. Both cases were contemporaneous to *Gray* and presented exactly the issue presented here, albeit involving judicial elections.

*Holshouser* was binding on this Court under *Mandel v. Bradley*, 432 U.S. 173 (1977):

> Summary affirmances … without doubt reject the specific challenges presented in the statement of jurisdiction and … prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions.

*Id.* at 176. The majority ignored *Mandel*, relying instead on *Dillenburg v. Kramer*, 469 F.2d 1222 (9th Cir. 1972), which predates *Mandel*, and asserted that the summary disposition in *Holshouser* "was likely intended to affirm the proposition that one

---

[14] *Little Thunder v. South Dakota*, 518 F.2d 1253 (8th Cir. 1975), also cited by the majority, is inapposite. There, only some persons governed by the elected officials were permitted to vote in the *general* election. Here, no such limit exists.

person, one vote does not apply to judicial elections …."  But that assertion ignores *Wells v. Edwards,* 347 F.Supp. 453 (M.D. La. 1972), *aff'd,* 409 U.S. 1095 (1973), the summary affirmance case actually cited on that point in *Chisom v. Roemer,* 501 U.S. 380 (1991), and continues to be cited to this day.  *See, e.g.*, *Hall v. Louisiana*, 12 F.Supp. 3d 878, 887 (M.D. La. 2014).  The majority improperly ignored *Holshouser* as potentially binding precedent under *Mandel*.

## CONCLUSION

For all the reasons presented above, this Court should grant a panel rehearing or rehearing en banc and reverse the erroneous panel Opinion.

RESPECTFULLY SUBMITTED this 11th day of December, 2015.

MICHAEL G. RANKIN
City Attorney


By:  s/*Dennis P. McLaughlin*
　　　Dennis P. McLaughlin
　　　Principal Assistant City Attorney
　　　Attorneys for Defendants/Appellees

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, counsel for Appellees state that they are unaware of any related cases pending in this Court.

DATED this 11th day of December, 2015.

MICHAEL G. RANKIN
City Attorney


By:  s/*Dennis P. McLaughlin*
     Dennis P. McLaughlin
     Principal Assistant City Attorney
     Attorneys for Defendants/Appellees

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing and rehearing en banc is proportionately spaced, has a typeface of 14 points or more, and contains 4,193 words.

DATED this 11th day of December, 2015.

MICHAEL G. RANKIN
City Attorney

By: s/*Dennis P. McLaughlin*
    Dennis P. McLaughlin
    Principal Assistant City Attorney
    Attorneys for Defendants/Appellees

## CERTIFICATE OF MAILING

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/EFC system on December 11, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 11th day of December, 2015.

MICHAEL G. RANKIN
City Attorney

By: s/*Dennis P. McLaughlin*
      Dennis P. McLaughlin
      Principal Assistant City Attorney
      Attorneys for Defendants/Appellees