NO. 15-16142

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PUBLIC INTEGRITY ALLIANCE INC., an Arizona
nonprofit membership corporation, et al.,

Appellant,

v.

CITY OF TUCSON, a chartered city of the state of Arizona, et al.,

Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

No. CV-15-138-TUC-CKJ
The Honorable Cindy K. Jorgenson
United States District Court Judge

# AMICUS BRIEF OF THE STATE OF WASHINGTON,
# THE WASHINGTON SECRETARY OF STATE,
# THE WASHINGTON STATE ASSOCIATION OF COUNTIES,
# THE ASSOCIATION OF WASHINGTON CITIES,
# AND THE WASHINGTON ASSOCIATION OF COUNTY OFFICIALS
# IN SUPPORT OF REHEARING OR REHEARING EN BANC

ROBERT W. FERGUSON
 *Attorney General*
Rebecca Glasgow, WSBA #32886
Callie A. Castillo, WSBA #38214
 *Deputy Solicitors General*
1125 Washington Street SE
Olympia, WA 98504-0100
360-664-3027
rebecca.glasgow@atg.wa.gov

*Additional Counsel Listed Inside*

Pamela B. Loginsky, WSBA #18096
206 10th Ave. SE
Olympia, WA 98501
360-895-3122
Counsel for Washington State
Association of Counties

Timothy Donaldson, WSBA #17128
15 N. Third Ave.
Walla Walla, WA 99362
509-522-2843
Counsel for the
Association of Washington Cities

John Scott Blonien WSBA #11344
206 10th Ave. SE
Olympia, WA 98501
360-489-3043
Counsel for the Washington Association
of County Officials

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   IDENTITY AND INTEREST OF AMICI ......................................................2

III.  ARGUMENT ...............................................................................................4

     A.  The Panel Opinion Would Call Into Question Several
         Washington Statutes Governing the Election of Hundreds of
         Local Elected Officials ...............................................................................4

     B.  The Panel Majority Failed to Consider the State Interest in
         Structuring Election Systems ....................................................................8

     C.  The Panel Decision Conflicts with Other Decisions Upholding
         State Voting Laws .....................................................................................13

IV.  CONCLUSION...........................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ............................................................9-10, 13

*Avery v. Midland Cty., Tex.*,
390 U.S. 474 (1968) .................................................................. 11

*Ball v. James*,
451 U.S. 355 (1981) ..................................................................... 8

*Burdick v. Takushi*,
504 U.S. 428 (1992) ................................................................ 9-10

*Clingman v. Beaver*,
544 U.S. 581 (2005) ................................................................ 9-10

*Foster v. Sunnyside Valley Irrig. Dist.*,
102 Wash. 2d 395,  687 P.2d 841 (1984) ...................................... 8

*Holt Civic Club v. City of Tuscaloosa*,
439 U.S. 60 (1978) ...................................................................... 14

*Nader v. Schaffer*,
417 F. Supp. 837 (D. Conn. 1976),
*summarily aff'd*, 429 U.S. 989 (1976) (same)............................... 14

*Norman v. Reed*,
502 U.S. 279 (1992) ..................................................................... 10

*Pub. Integrity All, Inc. v. City of Tucson*,
805 F.3d 876 (9th Cir. 2015).......................................... 1, 4, 8, 12

*Rice v. Cayetano*
528 U.S. 495 (2000) ..................................................................... 13

*Rogers v. Lodge*,
 458 U.S. 613 (1982) ................................................................... 12

*Rosario v. Rockefeller*,
 410 U.S. 752 (1973) ................................................................... 14

*Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.*,
 410 U.S. 719 (1973) ............................................................... 8, 14

*Smith v. Allwright*,
 321 U.S. 649 (1944) ................................................................... 13

*State v. Bd. of Comm'rs of King Cty.*,
 146 Wash. 449 (1928) ................................................................. 5

*State v. Superior Court for King Cty.*,
 121 Wash. 588 (1922) ................................................................. 5

*Storer v. Brown,*
 415 U.S. 724 (1974) ............................................................... 9, 13

*Washington State Grange v. Washington State Republican Party*,
 552 U.S. 442 (2008) ................................................................... 9

*Younger v. Harris*,
 401 U.S. 37 (1971) ..................................................................... 9

*Ziskis v. Symington*,
 47 F.3d 1004 (9th Cir. 1995) ..................................................... 14

## Constitutional Provisions

U.S. Const. amend. I ..................................................................... 9

U.S. Const. amend. XIV ........................................................... 9, 11

## Statutes

Wash. Rev. Code § 28A.343.660 ................................................ 6-7

Wash. Rev. Code § 29A.04.127 .................................................... 7-8

Wash. Rev. Code § 29A.52.112 ................................................ 5, 7-8

Wash. Rev. Code § 29A.52.231 ...................................................... 7

Wash. Rev. Code § 35.18.020 ......................................................... 6

Wash. Rev. Code § 35.23.051 ......................................................... 6

Wash. Rev. Code § 35.23.850 ......................................................... 6

Wash. Rev. Code § 35A.12.040 ....................................................... 6

Wash. Rev. Code § 35A.12.180 ....................................................... 6

Wash. Rev. Code § 36.32.040 ...................................................... 4-5

Wash. Rev. Code § 36.32.050 ...................................................... 4-5

Wash. Rev. Code § 36.32.0556 .................................................... 4-5

Wash. Rev. Code § 52.14.013 ......................................................... 7

Wash. Rev. Code § 52.26.080 ......................................................... 7

Wash. Rev. Code § 53.12.010 ......................................................... 7

Wash. Rev. Code § 57.12.039 ......................................................... 7

Wash. Rev. Code Title 35 .......................................................... 5-6

Wash. Rev. Code Title 35A ........................................................... 6

**Rules**

Cir. Rule 29-2(a) ......................................................................... 2

# I.    INTRODUCTION

The panel majority misunderstood the facts and misapplied the law. The result is an extraordinary ruling that would call into question countless local election systems.

The majority asserts, without citation or discussion, that Tucson's system of electing city council members—with primaries by ward and the general election at large—is "unusual." *Pub. Integrity All., Inc. v. City of Tucson*, 805 F.3d 876, 878 (9th Cir. 2015). Not true. Counties, cities, school boards, and other local governments throughout Washington State have used this hybrid system in countless elections for nearly a century.

Perhaps because of its mistaken perception of how common this election system is, the panel majority gave short shrift to the strong interest States and local governments have in choosing their own election systems and it ignored theoretical holes in its own reasoning. In particular, the majority opinion ignores the conflict its reasoning creates with other cases upholding systems that limit electoral participation at various stages of elections based on some form of voter qualification. It also finds a one-person, one-vote violation even though each voter in Tucson is given precisely the same power—to vote in the

primary in his or her own ward and to vote for all candidates city-wide in the general election.

This Court should grant rehearing.

## II.    IDENTITY AND INTEREST OF AMICI

For almost 100 years, the State of Washington has used an election system similar to the one that the majority opinion invalidated to elect county commissioners in all but a few Washington counties. Further, several Washington statutes require or permit other local jurisdictions to use a hybrid election system similar to the one at issue in this case. The State of Washington has a strong interest in preserving the constitutionality of its statutes and in avoiding disruption to the election systems used in 32 of its 39 counties. Washington also has an interest in avoiding disruption to the election system used by multiple Washington cities, the Seattle School District, and many special purpose districts.[1]

---

[1] Under Circuit Rule 29-2(a), the State of Washington may file an amicus brief supporting panel or en banc rehearing without consent from the parties or leave of the court, but additional parties are joining this brief. All parties have consented to joinder of additional amici, with Appellant consenting on the condition that the brief complies with the content requirements set forth in the Federal Rules of Appellate Procedure and the Ninth Circuit Rules. No party's counsel authored this brief in whole or in part, and no person or party contributed any money to fund the preparation or submission of this brief.

Kim Wyman, Washington's Secretary of State, is Washington's chief elections officer. She is responsible for supervising state and local elections and she promotes the public trust by preserving the integrity of elections in Washington. The Secretary of State shares the State's interest in maintaining the integrity of Washington elections, preserving the constitutionality of Washington's election statutes, and avoiding disruption to Washington's election systems.

The Washington State Association of Counties and the Association of Washington Cities are non-profit, non-partisan organizations that represent Washington's counties and Washington's cities and towns, respectively, before the state legislature, the state executive branch, and regulatory agencies. Although membership is voluntary, the Association of Counties consistently maintains 100 percent participation from Washington's 39 counties, and the Association of Cities includes 100 percent participation from Washington's 281 cities and towns. The Association of Counties has an interest in sustaining the decades-old practice of electing county commissioners through a hybrid system. The Association of Cities has an interest in ensuring the broadest spectrum of options for self-governance for its members.

The Washington Association of County Officials is a not-for-profit organization, whose members are the elected clerks, coroners, assessors, auditors, prosecutors, sheriffs, and treasurers from a majority of Washington's counties. The county auditors are responsible for managing elections in each county, many of which occur using a hybrid system similar to the one at issue in this case. The Washington Association of County Officials has an interest in efficient and fair elections, including the election of the members of the legislative branch of county government.

## III.   ARGUMENT

### A.   The Panel Opinion Would Call Into Question Several Washington Statutes Governing the Election of Hundreds of Local Elected Officials

The panel opinion asserts that the hybrid ward/at-large method of electing local officials is "unusual." *Pub. Integrity All, Inc.*, 805 F.3d at 878. Yet the State of Washington has adopted several statutes that require or permit local governments to elect their legislative bodies using a hybrid system similar to the one at issue here.

Most significantly, the 32 Washington counties without home rule charters elect their county commissioners pursuant to Washington Revised Code sections 36.32.040, .050, and .0556. "[T]he qualified electors of each

county commissioner district, and they only, shall nominate from among their own number, candidates for the office of county commissioner of such commissioner district to be voted for at the following general election." Wash. Rev. Code § 36.32.040. Nominations occur under Washington's top-two primary system. Wash. Rev. Code § 36.32.040; Wash. Rev. Code § 29A.52.112. Then, the "[c]ounty commissioners shall be elected by the qualified voters of the county and the person receiving the highest number of votes for the office of commissioner for the district in which he or she resides shall be declared duly elected from that district." Wash. Rev. Code § 36.32.050; *see also* Wash. Rev. Code § 36.32.0556. Non-charter counties have used this system for almost 100 years. *See State v. Bd. of Comm'rs of King Cty.*, 146 Wash. 449, 463 (1928) (explaining at that time "under the law, the commissioners are nominated by the electors of the respective districts and are voted for by the electors of the counties at large"); *State v. Superior Court for King Cty.*, 121 Wash. 588, 594 (1922) (quoting Rem. Code § 3874, describing the same).

Washington cities and towns can adopt charters, or they can incorporate and organize under a number of different statutes. Wash. Rev. Code Title 35;

Wash. Rev. Code Title 35A. Multiple Washington cities of various sizes have opted to elect their city councils under a system similar to Tucson's.

For example, cities or towns incorporated under Title 35 of the Washington Revised Code that adopt a council-manager plan can create wards or districts. Wash. Rev. Code § 35.18.020. Where they do, "[o]nly a resident of the ward or district may be a candidate for, or hold office as, a councilmember of the ward or district; and . . . only voters of the ward or district may vote at a primary to nominate candidates for a councilmember of the ward or district. Voters of the entire city or town may vote at the general election to elect a councilmember of a ward or district. . . ." Wash. Rev. Code § 35.18.020; s*ee also* Wash. Rev. Code § 35.23.051, .850 (second class cities with wards or districts); Wash. Rev. Code § 35A.12.040, .180 (optional code cities with mayor-council form of government). The Association of Washington Cities estimates that about 20 Washington city councils are elected using this "hybrid" system.

Board members of the Seattle School District are also elected under this system. Washington Revised Code § 28A.343.660 provides that school districts containing cities with more than 400,000 people shall be divided into seven director districts. Wash. Rev. Code § 28A.343.660. A candidate for the

school board must be a resident of his or her own district. Wash. Rev. Code § 28A.343.660. Candidates shall be voted on in the primary only by registered voters of that particular district. *Id.* Then, in the general election, each position shall be voted on by all the registered voters in the school district. *Id.*

Finally, several Washington special purpose districts have boards or commissions that are elected under this hybrid system. These include, for example, port districts, Wash. Rev. Code § 53.12.010; public utility districts, Wash. Rev. Code § 54.12.010; fire protection districts, Wash. Rev. Code § 52.14.013, Wash. Rev. Code § 52.26.080; and water-sewer districts, Wash. Rev. Code § 57.12.039.

There are some aspects of Washington's election procedures under these statutes that differ from Tucson's. For example, while Washington's county commissioner elections are partisan, city and special purpose district elections are nonpartisan. Wash. Rev. Code § 29A.52.231. Moreover, for all of these elections, Washington conducts a top-two primary. All primary voters vote the same ballot, and the top two vote-getters for each position advance to the general election, regardless of party preference. Wash. Rev. Code § 29A.52.112; Wash. Rev. Code § 29A.04.127. As a result, the determinative contest occurs at the general election, not at the primary, avoiding a

circumstance that the majority found particularly troubling. Wash. Rev. Code § 29A.52.112; Wash. Rev. Code § 29A.04.127; *Pub. Integrity All., Inc.*, 805 F.3d at 880.

In addition, where municipal special purpose districts are concerned, the Supreme Court has departed from a strict one-person, one-vote principle if the district exercises few governmental powers and the election scheme is reasonable in light of the disproportionate impact the district has on a definable class. *See Foster v. Sunnyside Valley Irrig. Dist.*, 102 Wash. 2d 395, 408, 687 P.2d 841 (1984) (describing *Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.*, 410 U.S. 719 (1973), and *Ball v. James*, 451 U.S. 355 (1981)).

Even so, the panel opinion's broad holding that "every otherwise eligible voter who will be a constituent of the winner of the general election must have an equal opportunity to participate in each election cycle through which that candidate is selected" calls these Washington statutes into question. *See Pub. Integrity All., Inc.*, 805 F.3d at 881. The panel opinion threatens far more elections than the majority understood, and it deserves more careful analysis.

**B.     The Panel Majority Failed to Consider the State Interest in Structuring Election Systems**

In its consideration of Tucson's hybrid voting system, the panel majority appears to conclude that, because the system excludes certain voters during the

primary election, the system is presumptively unconstitutional. But the Supreme Court has said that the assumption that an election system is unconstitutional because it imposes *any* limitation on voter choice is "simply wrong." *See Burdick v. Takushi*, 504 U.S. 428, 440 n.10 (1992). In fact, the Court long ago rejected a strict "litmus-paper test" against state election laws like that applied by the panel opinion here. *Anderson v. Celebrezze*, 460 U.S. 780, 788-89 (1983) (citing *Storer v. Brown*, 415 U.S. 724, 730 (1974)).[2]

The Supreme Court has also recognized a state's expansive power to prescribe the election process for state and local offices, within broad constitutional bounds. *E.g.*, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008); *Clingman v. Beaver*, 544 U.S. 581, 586 (2005). The federalism that animates our Constitution is "sensitiv[e] to the legitimate interests of both State and National Governments," recognizing that "the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44 (1971).

---

[2] While the *Anderson* Court based its decision directly on the First and Fourteenth Amendments, it relied on the Court's previous equal protection analysis in election cases. *Anderson*, 460 U.S. at 786 n.7.

Thus, the Supreme Court applies a flexible approach that weighs the "character and magnitude of the asserted injury to [the voter's rights]" against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789; *see also Burdick*, 504 U.S. at 434 (applying same balancing test to equal protection challenge to state voting restriction); *Clingman*, 544 U.S. at 586-87 (applying same analysis to restriction on participation in state semi-closed primary). "In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the [voter's] rights." *Anderson*, 460 U.S. at 789. Only if a state election law imposes "'severe' restrictions" must it also be "'narrowly drawn to advance a state interest of compelling importance'" to pass constitutional muster. *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). If, on the other hand, the law imposes "only 'reasonable, nondiscriminatory restrictions,'" then the state's "'important regulatory interests'" generally suffice to justify restricting voters' rights. *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788).

In this case, as Judge Tallman recognized, the panel opinion failed to apply the appropriate standard when deciding the constitutionality of Tucson's

hybrid voting system. In fact, the panel opinion failed to give *any weight* to the government's important regulatory interests in structuring its electoral system to meet the needs of its electorate.

Under the hybrid system, elected county commissioners, city councilmembers, and district board and commission members are accountable to every person impacted by their decisions because voters jurisdiction-wide elect these officials in the general election. But these elected officials are also especially accountable to voters in their own ward or district because those voters are responsible for nominating them in the primary. Nonetheless, the panel opinion completely and incorrectly dismissed the idea that state and local governments—including those in Washington—have an interest in ensuring that local governments consist of officials especially attuned to individual wards or districts even if, ultimately, the officials remain accountable to the electorate as a whole.

Moreover, the majority opinion glosses over a fundamental flaw in its one-person, one-vote analysis. Given its roots in the Equal Protection Clause, the one-person, one-vote principle is obviously focused on equality. *See Avery v. Midland Cty., Tex.*, 390 U.S. 474, 480 (1968) (states must ensure that those qualified to vote have the right to an equally effective voice in the election

process). The panel majority found inequality here by focusing myopically on the inability of voters in one ward to affect the primary in another ward. *See, e.g.*, *Pub. Integrity All., Inc.*, 805 F.3d at 881 ("Just as the city could not exclude a resident of Ward 1 from voting in the general election for his council member from Ward 2, so the city may not exclude that resident from a primary election for the same official."). But in that respect, all voters in Tucson are treated the same—no one can vote in another ward's primary, but everyone can vote in the general election. Contrary to the majority's reasoning, each voter thus has the same level of influence under this system because each voter has the opportunity to nominate candidates from his or her own district through the primary, followed by the opportunity to vote for all council or commission positions in the general election. When the whole system is considered, each voter has the benefit of one member of the council who is especially attuned to his or her local concerns, and thus, voters from all districts are treated equally.[3]

Because the panel majority failed to give due consideration to the government's side of the balancing test, it was in no position to strike down

---

[3] This is not to say that this electoral system can never lead to problems. As with other at-large election systems, a hybrid ward/at-large system can in certain circumstances lead to dilution of the votes of minority voters. *See Rogers v. Lodge*, 458 U.S. 613, 622 (1982) (striking down county at-large voting system that was "maintained for the invidious purpose of diluting the voting strength of the black population"). But there is no such allegation here.

Tucson's system. *Anderson*, 460 U.S. at 789. This is especially clear given the theoretical flaws in the majority's reasoning. This Court should reconsider and apply the proper standard and deference.

## C.     The Panel Decision Conflicts with Other Decisions Upholding State Voting Laws

The panel majority struck down Tucson's hybrid voting system based on the erroneous assumption that state and local governments cannot structure their voting systems so that electoral participation in the primary differs from that in the general election. In so holding, the decision conflicts with many other decisions upholding state electoral systems that also impose some restriction on voting at various stages of the election.[4]

For example, states have long employed closed or semi-closed primaries whereby only qualified voters, usually based on political party registration, may participate in the nomination process for determining the ultimate candidates in the general election. Yet, courts have also upheld these voting systems as legitimate state regulations. *See, e.g.*, *Storer*, 415 U.S. at 741 (state

---

[4] These obviously do not include electoral schemes that have been struck down for discriminating against classes of voters for invidious reasons such as race. *See, e.g.*, *Smith v. Allwright*, 321 U.S. 649 (1944) (striking system where only white citizens could participate in political party system); *Rice v. Cayetano*, 528 U.S. 495 (2000) (striking down state law excluding non-native Hawaiians from voting in certain elections).

may set procedures for nominating candidates for the general election ballot); *Rosario v. Rockefeller*, 410 U.S. 752 (1973) (permitting state to require party registration in order to vote in primary); *Ziskis v. Symington*, 47 F.3d 1004 (9th Cir. 1995) (upholding state's closed primary election system); *Nader v. Schaffer*, 417 F. Supp. 837 (D. Conn. 1976), *summarily aff'd*, 429 U.S. 989 (1976) (same).

Similarly, state and local governments have imposed voter qualification requirements in order to participate in certain elections. These systems have been upheld so long as they are reasonably related to important government interests. *See, e.g.*, *Salyer Land Co.*, 410 U.S. 719 (state statute limiting voting to district landowners did not violate equal protection rights of non-landowning residents); *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60 (1978) ("one-person one-vote" principle does not extend to all individuals impacted by local jurisdiction; state may constitutionally restrict voting to within geographic boundaries).

In each of these scenarios, the state election system limited electoral participation based on some form of voter qualification. The majority's opinion now calls these electoral systems into question. But in these other cases, the state or local government's voter classification scheme has been upheld so long

as it is grounded in a rational, legitimate government interest, and not on some invidious classification. The Court should reconsider to avoid this conflict.

## IV. CONCLUSION

The opinion in this case should be reconsidered, either by the panel or en banc, so that this Court can apply the appropriate scrutiny and fully consider the state and local government interest in being allowed the choice to use a hybrid election scheme like the one at issue in this case.

RESPECTFULLY SUBMITTED this 21st day of December 2015.

ROBERT W. FERGUSON
  *Attorney General*
*s/ Rebecca R. Glasgow*
Rebecca R. Glasgow, WSBA # 32886
Callie A. Castillo, WSBA # 38214
  *Deputy Solicitors General*
PO Box 40100
Olympia, WA 98504-0100
360-753-6200
Counsel for the State of Washington and
the Washington Secretary of State

*s/Timothy Donaldson*
Timothy Donaldson, WSBA # 17128
15 N. Third Ave.
Walla Walla, WA 99362
509-522-2843
Counsel for the Association of
Washington Cities

*s/Pamela B. Loginsky*
Pamela B. Loginsky,WSBA # 18096
206 10th Ave. SE
Olympia, WA 98501
360-895-3122
Counsel for Washington State
Association of Counties

*s/ John Scott Blonien*
John Scott Blonien WSBA# 11344
206 10th Ave. SE
Olympia, WA 98501
360-489-3043
Counsel for the Washington
Association of County Officials

**CERTIFICATE OF COMPLIANCE** (FRAP 32(a)(7))

I certify that pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached amicus brief is proportionately spaced, has a typeface of 14 points or more and contains 2,844 words.

s/*Rebecca R. Glasgow*
REBECCA R. GLASGOW
*Deputy Solicitor General*

# CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury, that I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 21st day of December 2015, at Olympia, Washington.

s/*Rebecca R. Glasgow*
REBECCA R. GLASGOW
*Deputy Solicitor General*